UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VICKIE BOUDREAUX | CIVIL ACTION |
| VERSUS | NO. 18-5569 |
| STRANCO FIELD SERVICES, LLC | SECTION M (3) |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by defendant Stranco Field Services, LLC ("Stranco"),[1] to which plaintiff Vickie Boudreaux ("Boudreaux") responds in opposition,[2] and in further support of which Stranco replies.[3] Also before the Court are a motion for summary judgment[4] and a motion *in limine*[5] filed by Stranco, to which Boudreaux responds in opposition,[6] and in further support of which Stranco replies.[7] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I. BACKGROUND

This case involves employment discrimination claims. Boudreaux alleges that her former employer, Stranco, reduced her compensation while simultaneously increasing the compensation of male employees in violation of the Equal Pay Act.[8] She also alleges that Stranco discriminated against her and subjected her to a hostile work environment due to sexual harassment.[9]

On September 10, 2015, Stranco hired Boudreaux as a receptionist, earning $10 per hour

---

[1] R. Doc. 4.
[2] R. Doc. 10.
[3] R. Doc. 13.
[4] R. Doc. 22.
[5] R. Doc. 21.
[6] R. Docs. 30 & 31, respectively.
[7] R. Docs. 38 & 37, respectively.
[8] R. Doc. 1 at 4-5.
[9] *Id.* at 5-8.

with no paid holidays or vacation.[10]  Her job responsibilities were solely within the accounting department, where she managed accounts receivable, accounts payable, payroll, job expenses, invoicing, collections, and performed any tasks delegated to her by CFO Jeffrey Boudreaux ("Jeffrey"), who was responsible for the finances of the company.[11]  On or about May 9, 2016, Stranco promoted Boudreaux to the position of accounting clerk at a $40,000 yearly salary, including paid holidays and vacations.[12]  Boudreaux states that while her duties remained the same, she had increased responsibility.[13]  However, on December 5, 2016, Stranco changed Boudreaux's pay to an hourly rate of $19 with a loss of paid holidays and vacation.[14]  Boudreaux alleges this change in pay reduced her compensation by approximately $2,912 per year.  Stranco said her change in pay was the result of an economic downturn in the oil and gas industry.[15]  But Boudreaux questioned why, simultaneously, "many of Stranco's male salaried employees received raises and bonuses and male hourly employees were converted to salaried positions with a total increase in pay."[16]  Stranco allegedly told Boudreaux that "it was her job to do payroll and not to question it."[17]  Boudreaux also claims she was later informed that she was converted to hourly pay because of missed time from work during the previous months due to surgery and an infection.[18]

When she was out due to surgery, Boudreaux alleges that she was told such time would be paid.  However, Stranco's CEO, Quinn Strander ("Strander"), allegedly implemented a new policy while Boudreaux was out that required her to use vacation time.  Boudreaux compares her treatment to that of Matthieu Boudreaux ("Matthieu"), who "[u]pon information and belief, missed

---

[10] R. Docs. 22-2 at 1-3; 30-1 at 1-2.
[11] R. Docs. 22-2 at 1-2; 30-1 at 1; 30-2 at 16-19.
[12] R. Docs. 1 at 2; 22-2 at 2; 30-1 at 1.
[13] R. Docs. 22-2 at 2; 30-1 at 1; 30-2 at 17.
[14] *See* R. Docs. 22-2 at 1-3; 30-1 at 1-2.
[15] *See* R. Docs. 22-2 at 3; 30-1 at 2.
[16] R. Doc. 1 at 2.
[17] *Id.*
[18] *Id.*; *see also* R. Docs. 22-2 at 3; 30-1 at 2.

sixty-two days during his first year of employment, from March to December 2012 but suffered no consequences to his employment."[19]

Boudreaux further alleges that Matthieu instructed her not to come into work on February 27, 2017, because it was Lundi Gras; however, she was later instructed to come into the office to complete payroll. In her deposition, Boudreaux testified that Strander told her, upon seeing her crying after she had been informed she would have to undergo surgery, that "he didn't like women in the office because they are too emotional and full of drama."[20] Boudreaux further testified that she guessed "everyone in the office" knew that Strander did not want women in the office, and that she overheard him tell another employee that he wished Stranco had never hired women.[21]

On August 18, 2017, Boudreaux met with Jeffrey and Matthieu when Matthieu professed to have received several complaints about Boudreaux's attitude. Boudreaux claims she asked why the complaints were not brought to her attention. Matthieu allegedly responded that he spoke to Jeffrey about the complaints but should have addressed them to her.[22] Further, Boudreaux testified in her deposition that Matthieu denied at this meeting that she would ever receive a salary or pay raise in the future.[23] Following the meeting, Jeffrey informed Boudreaux that no complaints had, in fact, been filed against her; and Boudreaux learned that Elliot Fields ("Fields"), a male employee whose pay structure had also been converted from salary to hourly, was placed back on salary. Boudreaux resigned on the day she met with Jeffrey and Matthieu, August 18, 2017.[24]

---

[19] R. Doc. 1 at 3.
[20] R. Doc. 30-2 at 33; *see also* R. Doc. 1 at 3 (alleging that Strander told Boudreaux that "women were too emotional and full of drama and should have never been allowed in the office").
[21] R. Doc. 30-2 at 34.
[22] *See id.* at 40-41.
[23] *Id.* at 40.
[24] R. Doc. 1 at 3-4.

Boudreaux alleges no facts about Matthieu or Fields' job positions or responsibilities.[25]  At the time Boudreaux's pay was reverted to hourly, Matthieu was the vice-president of operations.[26]  When Boudreaux claims to have been constructively discharged, Matthieu was about to become president.[27]  Fields was a document control manager, charged with maintaining, developing, and implementing document control systems to ensure regulatory compliance, who was paid a salary of $75,000 per year.  Following the payroll period starting on December 5, 2016, Fields was reduced to an hourly rate of $30.00, at a rate of reduction the same as Boudreaux's.[28]

Although not mentioned in Boudreaux's complaint, Boudreaux's motion for summary judgment references Corey Gros ("Gros") as a comparator to her in support of her Equal Pay Act claim.  When Stranco hired Gros in an unspecified position, he received $16.00 per hour.  In September of 2016, Gros's position changed to that of personnel coordinator with an annual salary of $65,000.  In that role, Gros recruited and interviewed candidates for operations positions, evaluated and assigned personnel to meet project needs, and acted as a troubleshooter to resolve problems with staff, assignments, and customers.  To perform this job, Gros worked regularly in the field and was required to be on call.  Then, on March 27, 2017, Gros took on the additional duties of an estimator, whereupon Gros' salary increased to $90,000.  These new duties required Gros to direct and prepare estimates in support of job bids, proposals, projects, and change orders.  Accordingly, Gros planned, coordinated, verified, and analyzed all aspects of the business to prepare accurate and competitive estimates.  Gros also consulted with Stranco management,

---

[25] *See* R. Doc. 1.
[26] *See* R. Docs. 22-2 at 4; 30-1 at 2.
[27] *See* R. Doc. 30-2 at 40-41.
[28] *See* R. Docs. 22-2 at 3, 7; 30-1 at 2-4.

customers, vendors, and personnel in other departments to discuss and resolve issues that involved analysis of documents to prepare time, cost, materials, and labor estimates.[29]

On June 1, 2018, Boudreaux filed this suit.[30] In support of her claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count I), Boudreaux alleges that male employees "whose salary was increased" at the time hers was decreased "performed job functions requiring equivalent skill, effort, and responsibility as Ms. Boudreaux."[31] Boudreaux also alleges claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of sex and a hostile work environment due to sexual harassment (Counts II & III).[32] As to the sexual harassment claim, Boudreaux testified that she was embarrassed when she observed a sex toy on Matthieu's desk on one occasion as she walked by his office. While Matthieu never said anything about the toy to Boudreaux, he did ask her co-worker, Connie Corkern ("Corkern"), how her partner "measured up."[33] Boudreaux asserts that Matthieu's conduct, coupled with Strander's comments that he wished Stranco did not employ women, created an abusive work environment.[34]

## II.    PENDING MOTIONS

### A.    12(b)(6) Motion to Dismiss

Stranco filed the instant motion to dismiss arguing that Boudreaux fails to state a claim in violation of the Equal Pay Act in Count I because she fails to allege any specific facts about any male employees as would show they have substantially equal skill, effort, and responsibility

---

[29] *See* R. Docs. 22-2 at 4-5; 30-1 at 2-3. While Boudreaux contests that this characterization of Gros' job duties is "self-serving," she does not submit specific facts or evidence to refute these statements, which is her burden on a motion for summary judgment.
[30] R. Doc. 1.
[31] *Id.* at 5.
[32] *Id.* at 5-7.
[33] R. Doc. 30-2 at 36-37.
[34] R. Doc. 1 at 7.

required in the performance of her job.[35]  Further, Stranco argues that Boudreaux's claim for sexual harassment in Count II must be dismissed because it is outside the scope of Boudreaux's EEOC charge of discrimination; thus, Boudreaux did not exhaust her administrative remedies as to that claim and cannot bring it in federal court.[36]

Boudreaux responds that her allegations about Fields and Matthieu are sufficiently specific to make a *prima facie* Equal Pay Act case.  Boudreaux says that these male comparators' "precise job functions … will be borne out through discovery."[37]  Further, Boudreaux contends that her EEOC charge of sexual discrimination should be liberally construed to permit her sexual harassment claim because its substance is "like and related" to that supporting her EEOC charge. Boudreaux explains that there are no separate boxes for "sex discrimination" and "sexual harassment" on the EEOC charge and posits that her description of the "sex" charge encompasses her instant claim for sexual harassment.[38]

### B.    Motion for Summary Judgment

Stranco argues that Boudreaux's claim under the Equal Pay Act must fail because she cannot establish that she performed substantially equal work as a male comparator who was paid more.[39]  Similarly, Stranco submits that Boudreaux fails to establish a *prima facie* case under Title VII because she cannot show that similarly situated employees were treated differently under circumstances nearly identical to hers.[40]  Finally, Stranco argues that even if the change in pay structure amounted to an adverse action, Boudreaux fails to prove any aggravating factors that

---

[35] R. Doc. 4-2 at 4-5.
[36] *Id.* at 6-7.
[37] R. Doc. 10 at 3-4.
[38] *Id.* at 4-7.
[39] R. Doc. 22-4 at 10-15.
[40] *Id.* at 15-16.

would create the intolerable conditions necessary for a constructive discharge claim.[41]

To substantiate her Equal Pay Act claim, Boudreaux contends that Gros was a male comparator who was paid more than she, arguing that Gros, as personnel coordinator, performed a job requiring the same skill, effort, and responsibility as was required by her accounting position.[42]  In support of her Title VII claim, Boudreaux asserts that the Court should adopt the more lenient test applied in the reduction-in-force context, which only requires her to produce evidence from which a factfinder might reasonably conclude that Stranco intended to discriminate against her by reducing her pay, rather than proving that Stranco gave better treatment to a similarly situated person outside her protected class.  Even though Boudreaux has not alleged a reduction-in-force claim, she says that Stranco's decision to systematically reduce its expenses is analogous to systematic elimination of employees.  Boudreaux also argues that a showing of a similarly situated employee is but one method of demonstrating pretext under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which contemplated that other facts, such as the employer's prior treatment, reaction to civil rights activities, and general policy and practice with respect to minority employment, could be alternative methods of proving discrimination.[43]   Finally, Boudreaux argues that a reasonable woman would feel compelled to resign in the totality of the circumstances presented to her, including Strander's repeated comments about women's disruptively "emotional" nature in the office and Matthieu's having left a sex toy on his desk, having fabricated vague complaints about Boudreaux's attitude, and having denied that she would ever receive a substantial pay increase.[44]

---

[41] *Id.* at 16-17.  Stranco also argues that Boudreaux's sexual harassment claim should be dismissed.  *Id.* at 17-21.  Because the Court dismisses Boudreaux's sexual harassment claim on the grounds raised in Stranco's motion to dismiss, the Court need not delineate here Stranco's arguments set out in its motion for summary judgment.

[42] R. Doc. 30 at 3-6.

[43] *Id.* at 6-9.

[44] *Id.* at 9-10.  Additionally, in support of her sexual harassment claim, Boudreaux largely reiterates the arguments she made in opposition to Stranco's Rule 12(b)(6) motion.  *Id.* at 11-14.

### C.     Motion *in Limine*

Stranco seeks to exclude at trial any "me too" evidence of other Stranco employees on the grounds that it will create irrelevant mini-trials on their discrimination claims and, alternatively, waste time.[45]  Stranco also argues that any evidence of alleged sexual remarks should be excluded if the Court grants its motion to dismiss Boudreaux's sexual harassment claim.[46]  Further, Stranco moves to limit anticipated opinion testimony by Boudreaux and other employees on the legal questions of a hostile work environment and discrimination.[47]  Finally, Stranco submits that any evidence regarding amounts of lost wages, interim earnings, and front pay should be excluded from the jury, maintaining that the issue of back pay and front pay is reserved for the Court as a matter of equitable relief under Title VII.[48]

In response, Boudreaux contends that the Court should deny Stranco's objections to unspecific "me too" evidence and any yet-to-be-offered opinion evidence because their context will be properly understood at trial.  Boudreaux further argues that any evidence of sexual remarks is relevant to her Title VII sex-discrimination claim, even if the Court dismisses her hostile work environment claim based on sexual harassment.  Finally, even though back pay and front pay are equitable remedies, Boudreaux notes that the Court may nevertheless allow the issue to reach the jury for an advisory opinion.[49]

---

[45] R. Doc. 21-3 at 2-6.
[46] *Id.* at 6-7.
[47] *Id.* at 7-9.
[48] *Id.* at 9-11.
[49] R. Doc. 31.

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Motion to Dismiss

##### 1. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Protfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose

authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. Failure to Exhaust Administrative Remedies

Prior to filing suit in federal court, a plaintiff alleging discrimination claims must exhaust administrative remedies by filing a timely charge of discrimination with the EEOC and receiving a statutory notice of right to sue. *Jones v. City of Houston*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)). In a deferral state, such as Louisiana,[50] a plaintiff must file a charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve the right to sue in federal court. *DeBlanc v. St. Tammany Parish Sch. Bd.*, 2015 WL 1245781, at \*6 (E.D. La. Mar. 18, 2015) (citing 42 U.S.C. § 2000e-5(e)(1) (providing that a Title VII plaintiff must file a charge within 300 days after the alleged unlawful employment practice in deferral states)).

The scope of an EEOC complaint is liberally construed to determine whether a plaintiff has administratively exhausted a particular claim. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "'On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt[ing] to achieve non-judicial resolution of employment discrimination claims.'" *Id.* (quoting *Pacheco*, 448 F.3d at 788-89). Balancing these considerations requires a court to interpret "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Pacheco*, 448 F.3d at 789). Thus, a court engages in a "'fact-

---

[50] States with a state or local administrative mechanism are referred to as deferral states and those without such an agency are referred to as non-deferral states.

intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label.'" *Id.* (quoting *Pacheco*, 448 F.3d at 789).

Here, Boudreaux timely filed her charge with the EEOC. Although Boudreaux checked the box for "sex" discrimination on the charge of discrimination, Boudreaux makes no mention of sexual harassment in the description of her claim.[51] Rather, the description focuses exclusively on her termination "[a]s a result of discrimination in the workplace" and pay in violation of the Equal Pay Act.[52] Because Boudreaux did not reference, much less explain or detail, any sexual harassment in her charge of discrimination, and because Boudreaux does not cite any evidence in the record indicating that the EEOC investigated a sexual harassment claim, the sexual harassment claim could not reasonably be expected to grow out of the charge of discrimination. *See, e.g.*, *Ellzey v. Catholic Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 602 (E.D. La. 2011) (dismissing plaintiff's sexual harassment claim where EEOC charge of discrimination did not contain sexual harassment allegations and collecting Fifth Circuit cases that "have held that a claim is not reasonably expected to grow out of a Plaintiff's EEOC Charge where the claim is not

---

[51] R. Doc. 4-3. Checking the sex-discrimination box is not sufficient. *See Givs v. City of Eunice*, 512 F. Supp. 2d 522, 536-37 (W.D. La. 2007) ("Even though plaintiff checked both the race and retaliation boxes on the EEOC complaint, the Court does not accept that merely checking the retaliation box is sufficient to exhaust his administrative remedies."); *Williams v. Health Tex. Provider Network*, 2017 WL 2608813, at *3 (N.D. Tex. June 1, 2017) (checking box on charge of discrimination, without further detail or explanation, is insufficient to exhaust administrative remedies), *adopted*, 2017 WL 2616952 (N.D. Tex. June 15, 2012).

[52] R. Doc. 4-3. The "particulars" recited by Boudreaux in her charge of discrimination read as follows:

I was hired by [Stranco] as a Receptionist earning $10/hr. and last worked in the capacity of Accounting Clerk, earning $19/hr. Beginning December 4, 2016 to August 18, 2017, my pay was decreased from an annual salary to an hourly rate of $19 with a loss of vacation time and paid holidays. During that same time, Males were hired at a higher starting pay rate of $16/hr., Males received salary increases and bonuses and Male hourly employees were converted to salaried positions with an increase in pay. As a result of the discrimination in the workplace, I felt I had no other choice but to resign which I did on August 18, 2017.

I was told that the company wasn't doing well and that my job was to do payroll and not question what was happening.

I believe I was discriminated against because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act.

alleged in a charge"); *see also Reno v. Metro. Transit Auth.*, 977 F. Supp. 812, 818-20 (S.D. Tex. 1997) (plaintiff failed to exhaust administrative remedies with respect to her sexual harassment claim where her EEOC charge of discrimination specifically alleged sex discrimination but failed to include factual allegations to support sexual harassment later asserted in federal court). Therefore, Boudreaux failed to exhaust her administrative remedies as to the sexual harassment claim, and Stranco's motion to dismiss is granted as to Count III.

### 3. Equal Pay Act

Employment discrimination on the basis of sex is prohibited by the Equal Pay Act, which provides in pertinent part:

> (1) No employer having [covered] employees … shall discriminate … on the basis of sex by paying wages to employees [in a covered establishment] at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex ….

29 U.S.C. § 206(d); *see King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011). To make a *prima facie* case under the Equal Pay Act, then, a plaintiff must establish that (1) her employer is subject to the Equal Pay Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993).

Stranco argues that Boudreaux failed to plead specific facts that show she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions. "To establish 'equal work,' the plaintiff need only prove that the 'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.' The [Equal Pay] Act necessarily

requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986) (quoting *Pearce v. Wichita Cty., City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979)) (citation omitted).

Boudreaux fails to plead sufficient facts to make a *prima facie* Equal Pay Act claim under *Twombly*. Although Boudreaux identifies Matthieu and Fields as two potential male comparators, she alleges nothing about the skill, effort, or responsibility required by the performance of either's position – in fact, making no reference at all to what position Matthieu or Fields holds at Stranco – and makes bare mention of that required by her own. Boudreaux's characterization of these and other unnamed male comparators, as having "performed work in a position requiring equal skill, effort and responsibility under the same working conditions," is conclusory and a mere "formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545; *see Corkern v. Stranco Field Servs., LLC*, 2018 WL 4614001, at *2 (E.D. La. Sept. 26, 2018) (plaintiff failed to plead sufficiently a *prima facie* reduced-salary claim under the Equal Pay Act). Thus, Boudreaux's allegations fail to state a claim under the Equal Pay Act.

However, courts should generally permit a plaintiff to amend the pleadings before granting dismissal unless amendment would be futile. *See Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2015 WL 7281618, at *13 (E.D. La. Nov. 16, 2015). The Court's ruling on Stranco's motion for summary judgment shall test the futility of amendment.

### B. Motion for Summary Judgment

#### 1. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656

(2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Equal Pay Act

An essential element of a *prima facie* case under the Equal Pay Act requires a showing that the plaintiff "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions" as an employee of the opposite sex. *Chance*, 984 F.2d at 153. Because Congress amended the Equal Pay Act to substitute the word "equal" for "comparable," the statute has been narrowly construed to be applied "only to jobs that are substantially identical or equal." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973); *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 548 F.2d 1256, 1258 (5th Cir. 1972) ("It is not merely comparable

skill and responsibility that Congress sought to address, but a substantial identity of job functions."); *see also Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 390 (5th Cir. 2004) (noting female plaintiff "must show that her job requirements and performance were substantially equal, though not necessarily identical, to those of a male employee") (citing 29 C.F.R. § 1620.13(e)). In determining whether the positions required substantially equal work, a court conducts a case-by-case analysis in the context of the employer's particular practices. *Hodgson*, 468 F.2d at 1258; *see, e.g.*, *Parr v. Nicholls State Univ.*, 2011 WL 838903, at *4-5 (E.D. La. Mar. 3, 2011) (considering varying roles, experience, and terms of employment for each position).

If the plaintiff makes a *prima facie* case, the burden shifts to the defendant to demonstrate that differential pay was justified under "(i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *see Reznick*, 104 F. App'x at 390 n.4 (citing *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983)).

Here, in response to Stranco's motion for summary judgment, Boudreaux fails to demonstrate that she performed a job requiring substantially equal skill, effort, and responsibility as a male employee who was paid more. Boudreaux contends that Gros was an appropriate male comparator. However, as a personnel coordinator and estimator, Gros had different responsibilities and skills than did Boudreaux as an accounting clerk or receptionist. Stranco initially hired Gros as a personnel coordinator. In that role, Gros recruited and interviewed candidates for operations positions, evaluated and assigned personnel to meet project needs, and acted as a troubleshooter to resolve problems with staff, assignments, and customers. To perform this job, Gros worked regularly in the field and was required to be on call. Later, Gros took on the

additional duties of an estimator, whereby Gros was responsible for the direction and preparation of estimates in support of job bids, proposals, projects, and change orders.  This role required him to plan, coordinate, verify, and analyze all aspects of the business to prepare accurate and competitive estimates.  Gros also consulted with Stranco management, customers, vendors, and personnel in other departments to discuss and resolve issues involving time, cost, materials, and labor estimates.[53]  Essentially, Gros' positions required skills uniquely geared towards Stranco's operations in the oil and gas industry.  In contrast, Boudreaux admits that her job responsibilities and duties were confined to the accounting department.  As a receptionist and accounting clerk, Boudreaux managed accounts receivable, accounts payable, payroll, job expenses, invoicing, collections, and performed finance-related tasks delegated to her by the CFO.  Boudreaux never worked in operations, worked in the field, was required to be on call, or handled project management or estimating – duties and responsibilities typical of Gros' role as personnel coordinator and estimator.[54]  Thus, under a summary judgment standard, because she has not shown she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as a male comparator, Boudreaux has failed to make a *prima facie* case under the Equal Pay Act.  *See Chance*, 984 F.2d at 153 (affirming judgment denying relief under Equal Pay Act for failure to establish substantially equal work).  Accordingly, as to her Equal Pay Act claim, amendment of her complaint would be futile, so Stranco's motion to dismiss Boudreaux's Equal Pay Act claim is granted.  Alternatively, the Court grants Stranco's motion for summary judgment dismissing Boudreaux's Equal Pay Act claim.

---

[53] *See* R. Docs. 22-2 at 4-5; 30-1 at 2-3.
[54] *See* R. Docs. 22-2 at 1-2; 30-1 at 1; 30-2 at 16-19.

### 3. Title VII

Title VII prohibits an employer from taking certain discriminatory actions against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff seeks to prove discrimination by circumstantial evidence, a plaintiff must generally prove that (1) plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position at issue, (3) the plaintiff was the subject of an adverse employment action, and (4) the plaintiff was treated less favorably because of membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 984-85 (5th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If a plaintiff establishes a *prima facie* case and thus creates a presumption of discrimination, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision. Then finally, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. However, the "ultimate burden" of persuasion remains with the plaintiff at "all times." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Boudreaux has not argued that any male was similarly situated to her for purposes of her sex-discrimination claim. Rather, Boudreaux insists that the Court should employ the more lenient standard applicable to reduction-of-force claims to establish a *prima facie* case of discrimination. Where an "employer reduces its workforce and does not plan to replace the discharged employee, 'the fourth element is that after [the] discharge, others who were not members of the protected class remained in similar positions,'" *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 668 (S.D. Tex. 2001) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)), or else the fourth

element may be satisfied by demonstrating "evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Id.* at 668-69 (citing *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996)). Boudreaux says that Stranco's systematic reduction of its employees' pay warrants application of this standard.

Boudreaux cites no authority as would persuade the Court that this standard should apply. Even an employee who holds a unique position, such as Boudreaux, may prove that she was "similarly situated" to another employee with a different position through any number of circumstances, such as when

> the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been ***nearly identical*** to that of the proffered comparator who drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for purposes of the discrimination analysis.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quotations and citations omitted) (emphasis added). Boudreaux provides insufficient facts to show that her situation is "nearly identical" to that of any male comparator. To the extent Boudreaux suggests that Gros is her comparator, the Court has already determined that they did not share responsibilities or supervisors. Accordingly, Boudreaux fails to establish her *prima facie* case, and Stranco is entitled to summary judgment on her Title VII sex-discrimination claim.

### 4. Constructive Discharge

Under the doctrine of constructive discharge, "an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial

purposes." *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). Thus, "[a]n employer is responsible for a constructive discharge in the same manner that it is responsible for the outright discriminatory discharge of a charging party" under Title VII. *Id.* (quotation omitted). "In determining whether an employer's actions constitute a constructive discharge, [a court] ask[s] whether 'working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 452-53 (5th Cir. 2014) (quoting *Suders*, 542 U.S. at 141). Courts in the Fifth Circuit consider six factors in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] ….

*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) (citation omitted). "A plaintiff alleging sexual harassment alone compelled him to resign must present 'something more' than what is required to establish a harassment or hostile work environment claim." *Id.* at 480 (quoting *Suders*, 542 U.S. at 147). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997)).

Although Boudreaux does not specifically allege that she was constructively discharged, she does allege that her pay was reduced, that she was "punished" for taking time off for her surgery, and that she was told the company would not hire women "in field tech positions."[55] Thus, Boudreaux's constructive discharge comprises one of Stranco's alleged adverse employment actions in her remaining Title VII claim.

---

[55] R. Doc. 1 at 6.

Stranco argues that Boudreaux's salary was not reduced because, even though her compensation scheme changed from salary to hourly, "the pay remained nearly equal, and Plaintiff did have the opportunity to earn overtime." Alternatively, Stranco insists that the delay between the alleged adverse employment action (change in pay structure on December 5, 2016) and the employee's decision to resign (August 18, 2017) precludes a finding of constructive discharge. Stranco further contends that the circumstances did not amount to the kind of intolerable conditions required by the Fifth Circuit to sustain a claim for constructive discharge.[56]

In opposition, Boudreaux fails to demonstrate that the change in pay structure actually reduced her pay. But even if Boudreaux's pay was reduced, the evidence supporting her additional allegations of "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation" fails to show intolerable circumstances that would compel a reasonable employee to resign. At most, Boudreaux argues that Strander made indiscreet complaints about women in the workplace, that Matthieu informed her she would not receive a raise, that Matthieu fabricated complaints about her attitude, and that she had, in passing, observed a sex toy on Matthieu's desk, which she knew Matthieu had discussed with Corkern.[57]

While Matthieu told Boudreaux that her pay would not be increased or converted back to salary, and even though Matthieu invented false complaints about her, such circumstances are not sufficient to support a finding of constructive discharge. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650, 653 (5th Cir. 2004) (no constructive discharge where employer "fabricat[ed] deficiencies in [her] work performance and set[] an overly strict performance plan for her; threaten[ed] to fire her if she did not meet her teamwork goals; micromanag[ed] her; exclude[ed] her from HR Department meetings; and ridicule[ed] her in front of her coworkers"). Moreover,

---

[56] R. Doc. 22-4 at 16-17.
[57] R. Doc. 30 at 9-10.

Boudreaux acted unreasonably when she promptly resigned on the basis of Matthieu's representations without challenging his assertions to her supervisor. *See Kimbrough v. Textron Sys. Marine & Land Sys.*, 2018 WL 2009998, at *7 (E.D. La. Apr. 30, 2018) ("rapid resignation, without any attempt to internally resolve any issues, may be unreasonable under the circumstances"); *see also Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 645 (W.D. Tex. 2014) ("reasonable worker would not have felt compelled to resign after one day of inappropriate comments from a supervisor before reporting that supervisor's conduct or finding out whether the threatened salary cuts would have actually occurred").

The remainder of Boudreaux's allegations comprise a theory of constructive discharge for sexual harassment. As discussed above, because sexual harassment was not identified or detailed in Boudreaux's EEOC charge of discrimination, and thus she has failed to exhaust administrative remedies for any alleged sexual harassment, such conduct cannot be the basis for a constructive discharge claim. *See, e.g.*, *Brown v. Prentiss Reg'l Hosp.*, 2013 WL 610520, at *6-7 (S.D. Miss. Feb. 19, 2013) (citing *Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 795 (5th Cir. 2002)) (court could not consider Title VII claim premised upon constructive discharge where plaintiff failed to allege facts that would support theory of constructive discharge in EEOC charge). Constructive discharge cannot be the back door for a sexual harassment claim barred at the front door.

### C.    Motion *in Limine*

Because the Court is dismissing all of Boudreaux's claims at this time, it is unnecessary to address the issues raised by Stranco's motion *in limine*. Accordingly, the motion is denied as moot.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Stranco's motion to dismiss (R. Doc. 4) is GRANTED.

IT IS FURTHER ORDERED that Stranco's motion for summary judgment (R. Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that Stranco's motion *in limine* (R. Doc. 21) is DENIED AS MOOT.

New Orleans, Louisiana, this 16th day of May, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE